The Honorable John C. Wyvill, Commissioner Arkansas Rehabilitation Services 1616 Brookwood Drive P.O. Box 3781 Little Rock, AR 72203
Dear Commissioner Wyvill:
I am writing in response to your request for "legal assistance and guidance" relating to a bond/lease agreement between your agency and Arkansas State University. You have recited as background the following information:
 In 1968, Arkansas Rehabilitation Services (ARS), at that time within the Department of Vocational Education, entered into a bond/lease agreement with Arkansas State University (ASU) whereby the complex known as Arkansas Service Center was constructed. A bond agreement was initiated for financing the development. The term of the agreement is for 40 years, due to expire on September 15, 2008, with the Lessor noted as ASU and one of the primary lessees being ARS. In addition, ARS has the option to purchase its interest at the conclusion of this period for $1.00. The facility and grounds consists [sic] of a 78,701 square foot building located on 39.68 acres among commercial and residential zones. ARS leases 47,387 square feet with some of the space being sublet to other agencies.
 Recent reviews and examination of financial records leads us to believe that for several years ARS has been charged a ratio in the sharing of bond costs and operational costs of the complex that we did not agree to undertake. ASU personnel have not been positively responsive to our requests for an independent audit and discussions for remedies for this problem. It is our belief under applicable Arkansas law that we have been charged $166,140 over and above our agreed upon amount of $93,261 for the Arkansas Service Center in the last fiscal year alone.
You have further provided me with numerous documents, including a copy of the bond/lease agreement, an appraisal report, various exchanges of correspondence and a newspaper article.
Against this backdrop, you have posed the following questions:
 1. To adequately understand the legal relationship between ASU and ARS regarding the billings by ASU associated with the management of the Arkansas Service Center, would it be appropriate to just look at the "lease agreement" as suggested by a legislative audit staff person? If not, why?
 2. What kind of duty does ASU have in its dealings with ARS in the running of the day-to-day operations of the Arkansas Service Center? For example, does ASU have a fiduciary duty to ARS and, if so, what kind of standards or responsibilities is associated with ASU's duties to ARS under Arkansas law?
 3. What are the duties and obligations required from ARS to perform under the agreements for the Arkansas Service Center to ASU?
 4. Absent a written agreement to the contrary, can the terms of payment for the maintenance of the Arkansas Service Center and related agreed upon terms be modified or altered under Arkansas law by either party?
 5. In FY 2001, it appears that ARS was assessed more than its agreed share of the operating deficit of the center. ASU calculated the Arkansas Service Center operating deficit as $308,811. Based upon our agreed share as spelled out in the agreement, 30.2% of this deficit, the share should be $93,261. Instead, the agency's share of the deficit was calculated to be $259,401 and this amount was paid by us resulting in an overpayment of $166,140. What remedies are available to ARS to seek recoupment of the monies owed by ASU? For instance, would it be appropriate for ARS to exercise its right of set-off, seek binding arbitration, file a request to the Claims Commission, or seek relief in court for the monies owed?
 6. What is the statute of limitations on the claims that ARS may have against ASU? How far back can we go to assert our claims for monies owed from a post secondary institution that may have overbilled our agency?
RESPONSE
Given the intensely factual nature of the dispute at issue, I must respectfully decline to answer your questions in a formal opinion. As confirmed by the sheer volume of material you have submitted in support of your request, assessing the respective rights and obligations of ARS and ASU will necessarily entail conducting an intensive factual investigation — a task I am neither equipped nor authorized to undertake in my role as issuer of opinions. Moreover, in order to avoid encroaching upon exclusively judicial prerogatives, it has long been the policy of this executive-branch office to avoid rendering opinions on matters that are either pending in or appear uniquely appropriate for submission to the courts for resolution. This same policy applies to matters that are pending or appear appropriate for ultimate resolution before the Claims Commission, which constitutes an arm of the legislature.
In my opinion, your questions should properly be addressed to the counsel appointed to represent your agency. Based upon a careful review of all the pertinent facts, counsel will doubtless provide the guidance you seek in determining how and where to proceed.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh